IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

THOMAS KELLER MITCHELL, *Appellant.*

No. 1 CA-CR 13-0339
FILED 4-21-2014

Appeal from the Superior Court in Yavapai County
No. P1300CR201000627
The Honorable Tina R. Ainley, Judge

**REVERSED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

David Goldberg, Attorney at Law, Fort Collins, Colorado
By David Goldberg
*Counsel for Appellant*

## OPINION

Presiding Judge Donn Kessler delivered the opinion of the Court, in which Judge Patricia K. Norris and Judge Maurice Portley joined.

**K E S S L E R,** Presiding Judge:

**¶1**        Appellant Thomas Keller Mitchell ("Mitchell") appeals from his convictions for transportation of dangerous drugs for sale, possession of marijuana, and possession of drug paraphernalia. Mitchell argues that the trial court erred by not suppressing evidence acquired during a vehicle search—which he asserts was the fruit of unconstitutional, warrantless global positioning system ("GPS") surveillance—and that he was subject to a duplicitous indictment. We reverse Mitchell's convictions because the installation, continued presence, and use of the GPS device to monitor Mitchell's movements constituted an unlawful search under the Fourth Amendment to the United States Constitution.[1] *See United States v. Jones*, 132 S.Ct. 945 (2012).

## FACTUAL AND PROCEDURAL HISTORY

**¶2**        Mitchell became the target of a drug investigation in early 2010 after a material informant ("Informant 1") told a Yavapai County Sheriff's deputy ("the Deputy") that he had purchased methamphetamine through a third party from Mitchell at a residence in Humboldt, Arizona. Informant 1 claimed to have purchased methamphetamine from Mitchell on two separate occasions between March 23 and March 31, 2010. Additionally, Informant 1 said that Mitchell would travel to Phoenix to collect money, including from someone named "Fat Jack" who lived in Humboldt. The Deputy knew Fat Jack to be associated with drug activity. The third party through whom Informant 1 purchased methamphetamine later became a second material informant ("Informant 2"). Informant 2 explained that Mitchell made drug runs to Phoenix several times a week.

---

[1] Mitchell does not argue that the GPS tracking violated the Arizona constitution. Accordingly, we do not consider whether such investigative methods receive greater scrutiny under state constitutional provisions.

¶3 Based on visual surveillance, the Deputy learned that Mitchell owned several vehicles, including a Ford pickup. The Deputy also learned that Mitchell used other people's vehicles to make drug runs. Prior to May 5, the Deputy observed Mitchell driving a Kia Sportage, which he later determined belonged to another person, C.W., who had given Mitchell permission to use the vehicle. The Deputy decided that the Kia was worth monitoring because it was the only vehicle belonging to another person that he had observed Mitchell driving.

¶4 On the night of May 5, acting without a warrant, the Deputy surreptitiously attached a GPS device to the undercarriage of the Kia without C.W.'s consent while it was parked in her driveway. The device remained on the Kia through May 30.[2] During this twenty-five-day period, the Deputy received constant updates from the GPS device. The GPS device tracked the Kia's speed and location and collected data about its whereabouts. The device was programmed to send text message alerts to the Deputy's cell phone whenever the Kia crossed certain "wave-points," one of which was the Phoenix city limits. Thereafter, the Deputy relied on the GPS data to locate the Kia in lieu of traditional visual surveillance.

¶5 On May 30, the Deputy received a GPS alert that the Kia was traveling towards Phoenix. The Deputy drove to C.W.'s residence and saw that the Kia was gone but that Mitchell's Ford pickup was in the driveway. He began tracking the Kia's location using the GPS data. When the GPS device indicated that the Kia was en route back to Humboldt, the Deputy parked his vehicle along Highway 69 at the entrance to Spring Valley to visually verify the GPS information. Within minutes, the Deputy saw Mitchell drive by in the Kia.

¶6 The Deputy followed the Kia into Humboldt and then took a quicker route to the Humboldt residence to intercept the Kia there. He arrived first and pulled in behind Mitchell's Ford pickup. Seconds later, Mitchell pulled into the driveway behind the Deputy, followed by a second deputy who had been called as backup.

¶7 The Deputy asked Mitchell where he was coming from, to which Mitchell replied that he had been visiting a friend in Mayer. As this

---

[2] The Deputy removed the device for a brief period sometime between May 19 and May 21 to recharge its battery, but surreptitiously replaced it by May 24, again at night, without a warrant, and without C.W.'s consent.

contradicted the Deputy's visual and electronic surveillance, he asked Mitchell to step out of the car and requested permission to conduct a vehicle search. Mitchell said that he did not believe he had permission to consent to the search because he did not own the vehicle. C.W. also refused consent. Consequently, the Deputy arranged for a drug dog to sniff the vehicle for contraband. When the dog alerted to the vehicle, the Deputy searched the Kia and located a black bag containing four and one half grams of methamphetamine, several pounds of marijuana, and bags of methamphetamine.

¶8 Mitchell was indicted on several drug-related charges. Mitchell moved to suppress the evidence obtained from the vehicle search, arguing that the installation and use of the GPS device to monitor his movements constituted an unlawful search under the Fourth Amendment. The trial court denied Mitchell's motion, explaining that Mitchell lacked standing to challenge the installation of the GPS device because "[t]he placement occurred on [C.W.'s] private property and not on property that belonged to [Mitchell]." The trial court also found that under *United States v. Knotts*, 460 U.S. 276 (1983), the use of the GPS device to monitor Mitchell's movements on public streets did not constitute a search under the Fourth Amendment.

¶9 Before the start of trial, the United States Supreme Court decided *Jones*, which addressed the Fourth Amendment implications of GPS placement and tracking. Mitchell moved for reconsideration of his motion to suppress in light of *Jones*, but the trial court summarily denied his motion. Mitchell again pressed his motion on the first day of trial, but the trial court denied it again, explaining its decision "was based on [Mitchell's] lack of standing."

¶10 Ultimately, a jury convicted Mitchell on one count of transportation of dangerous drugs for sale, one count of possession of marijuana, and two counts of possession of drug paraphernalia. Mitchell timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-120.21(A)(1) (2003).

**STANDARD OF REVIEW**

¶11 We review the denial of a motion to suppress evidence for an abuse of discretion. *State v. Peterson*, 228 Ariz. 405, 407, ¶ 6, 267 P.3d 1197, 1199 (App. 2011). In doing so, we consider only the evidence presented at the suppression hearing and view that evidence in the light most favorable to sustaining the trial court's ruling. *State v. Gay*, 214 Ariz.

214, 217, ¶ 4, 150 P.3d 787, 790 (App. 2007). Although we defer to the trial court's factual determinations, we review its legal conclusions *de novo*. *State v. Olm*, 223 Ariz. 429, 432, ¶ 7, 224 P.3d 245, 248 (App. 2010).

## DISCUSSION

**¶12** Relying on *Jones*, Mitchell argues that the warrantless installation and use of the GPS device to track his movements while driving the Kia was an unlawful search.[3] The State does not dispute that a trespass occurred but argues that Mitchell lacks standing to challenge the installation of the device because he was not in possession of the vehicle at the time the device was installed, he was not the owner of the vehicle, nor was he the exclusive driver, as was Jones. Further, the State asserts that even if the GPS tracking was unlawful, the good-faith exception precludes application of the exclusionary rule because *Jones* was decided after the events here, and the Deputy relied in good faith on binding appellate precedent when he attached the GPS device without a warrant. For the following reasons, we conclude that Mitchell has standing to challenge the warrantless GPS tracking, that such tracking violated his Fourth Amendment rights under *Jones*, and that the exclusionary rule applies to all evidence seized as a fruit of the unconstitutional GPS surveillance.

## I.    Standing

**¶13** The Fourth Amendment to the United States Constitution provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." In *Jones*, the Supreme Court concluded that the installation of a GPS device on a target suspect's vehicle and its subsequent use to track the target's movements was a search under the Fourth Amendment. 132 S.Ct. at 949. There, law enforcement agents installed a GPS device on the undercarriage of a

---

[3] Mitchell also argues that the GPS tracking was unlawful under the *Katz* reasonable-expectation-of-privacy analysis relied on by Justice Alito in his *Jones* concurrence. 132 S.Ct. at 962-64 (Alito, J., concurring); *see Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). Independent of the GPS tracking, Mitchell argues that his detention and the dog sniff violated the Fourth Amendment, and that he was subject to a duplicitous indictment. Because resolution of the Fourth Amendment issue under *Jones* is dispositive, we do not address Mitchell's alternative arguments.

vehicle driven exclusively by Jones, but registered to his wife, while it was parked in a public parking lot. *Id.* at 947, 949 n.2. Instead of determining whether Jones had a reasonable expectation of privacy in his public movements under *Katz v. United States*, 389 U.S. 347 (1967),[4] the *Jones* majority relied on a trespass theory. The Court clarified that "the *Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test." *Jones*, 132 S.Ct. at 952. Thus, the Court reasoned that an automobile is undisputedly an "effect" for purposes of the Fourth Amendment, and that the government's physical occupation of private property with the purpose of obtaining information undoubtedly "would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." *Id.* at 949. Because *Jones* involved a trespass onto a private effect, the Court's majority declined to decide whether similar tracking accomplished without a physical intrusion would constitute a search under the *Katz* test.[5] *Id.* at 954.

¶14 Further, the Court explicitly declined to consider the Fourth Amendment significance of Jones' status vis-à-vis the vehicle because the government conceded Jones had standing. *Id.* at 949 n.2. The Court noted, however, that Jones had at least the property rights of a bailee. *Id.* Implicit in the Court's statement is that the person challenging a search based upon a trespass onto a constitutionally protected area must have an interest in the property sufficient to contest the intrusion. That is, the person must have standing.

¶15 The issue presented here is whether a defendant has standing to challenge GPS surveillance conducted without the vehicle owner's knowledge or consent when the defendant does not own the vehicle but: (1) Drives it sporadically with the knowledge of the police and permission of the owner; (2) Lawfully possessed the vehicle before the initial trespassory act occurred and comes into lawful possession while the device is still in place; and (3) Is the target of the GPS surveillance. Although *Jones* did not decide the standing question, other courts have determined when a defendant has standing to challenge GPS tracking

---

[4] Under *Katz*, the relevant inquiry is whether the government impinged on a person's reasonable expectation of privacy: that is, whether the person exhibited a subjective expectation of privacy that society recognizes as reasonable. 389 U.S. at 361 (Harlan, J., concurring).

[5] This issue was the subject of two concurring opinions in *Jones*. *See* 132 S.Ct. at 954-57 (Sotomayor, J., concurring); *id.* at 957-64 (Alito, J., concurring).

based on a trespass. As we explain, although the facts of each case vary, the common denominator across jurisdictions is that lawful possession of the vehicle at the time of the physical intrusion is sufficient to confer standing. *See People v. LeFlore*, 996 N.E.2d 678, 686-87 (Ill. App. 2013) (synthesizing various GPS standing cases), *review granted*, 3 N.E.3d 799 (Ill., Jan. 29, 2014). The standing inquiry is best understood, then, as a combination of two factors: property interest and timing.

### A.      Lawful Possession

**¶16**          *Jones* demonstrates that ownership of the vehicle is not required under the trespass test. Jones was not the registered owner of the vehicle. 132 S.Ct. at 949 n.2. Instead, he was the exclusive driver, he was in possession of the vehicle at the time that the GPS device was installed, and he was the target of the investigation. *Id.* Other courts have analyzed the standing question under a variety of factual scenarios. Most of these cases turn on whether the defendant had lawful possession of the vehicle when the device was installed or was the target of the surveillance. *See, e.g., United States v. Gibson*, 708 F.3d 1256, 1277 (11th Cir. 2013) (holding that the defendant had standing to challenge the installation and use of the GPS device while he was in possession of the vehicle with the owner's consent, drove it often, and was borrowing the car at the time of installation); *United States v. Hernandez*, 647 F.3d 216, 219 (5th Cir. 2011) (holding the defendant lacked standing to challenge the installation and use of a GPS device on a car owned by his brother, explaining that the defendant was not a regular driver, the car was parked outside his brother's house when it was installed, nothing suggested that he had a possessory interest in the house where the car was parked, and he was not the target of the investigation);[6] *United States v. Lopez*, 895 F. Supp. 2d 592, 600-01 (D. Del. 2012) (finding that defendant's possession of vehicles at time GPS devices were installed was sufficient to satisfy trespass standing requirement under *Jones*); *Commonwealth v. Arthur*, 62 A.3d 424, 430 (Pa. Super. Ct. 2013) (concluding that defendant lacked standing because she did not own or have possessory interest in car, never drove it, nor was she a passenger at the time of GPS installation).

**¶17**          In *People v. LeFlore*, the Illinois Court of Appeals noted several factors that might be relevant to determining whether a defendant

---

[6] Although *Hernandez* was decided pre-*Jones*, it analyzed the circumstances under which a defendant has standing to challenge the installation of a GPS device, an issue *Jones* left unresolved.

has standing, including the person's ownership or possessory interest in the property, prior use of the property, the ability to control or exclude others' use of the property, and the person's subjective expectation of privacy in the property. 996 N.E.2d at 683. The court then synthesized various standing decisions from other jurisdictions and determined that the common denominator under *Jones*' progeny is that lawful possession at the time of the trespass is sufficient to confer standing. 996 N.E. at 686. "Thus, if the defendant borrows a vehicle with the owner's consent and is in lawful possession of the vehicle when the GPS device is installed, the defendant has standing . . . to challenge the installation." *Id.* We agree that lawful possession at the time of the physical intrusion is sufficient to confer upon a defendant standing to challenge GPS tracking under the *Jones* trespass test.

¶18 The lawful possession standard is consistent with basic principles of tort law regarding trespasses. At common law, a trespass action could be maintained by either a bailor or a bailee of chattel. Restatement (Second) of Torts § 219 cmt. b (1965) (hereinafter "Restatement").[7] Black's Law Dictionary defines a "bailee" as "[a] person who receives personal property from another, and has possession of but not title to the property."[8] 161 (9th ed. 2009). For purposes of a common law trespass action, "[i]t is normally immaterial that the person in possession is not entitled to retain possession as against some third person . . . ." Restatement § 218 cmt. b; *see also* Restatement § 895 cmt. j (1979) ("[W]hen one person has been in possession of . . . chattel and another has been entitled to immediate possession, as in the case of a bailment at will . . . a tortfeasor who harms or interferes with . . . the chattel may be subjected to actions brought by both parties.").

¶19 Thus, lawful possession of the vehicle during the trespass is sufficient to confer standing under *Jones*. Here, Mitchell was not in lawful possession of the vehicle at the time the GPS device was installed and, therefore, does not fall squarely within the scope of this general rule. However, he was in lawful possession before installation and sporadically thereafter, the police knew he was using the vehicle, he was the target of the surveillance, and it is undisputed that Mitchell lawfully possessed the

---

[7] Arizona courts follow the Restatement in the absence of contrary authority. *Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 330, 762 P.2d 609, 617 (App. 1988).

[8] The *Jones* majority used this common-law doctrine to characterize Jones' interest in the tracked vehicle. *Jones*, 132 S.Ct. at 949 n.2.

vehicle on the day of his arrest. Therefore, on those occasions Mitchell had the rights of a bailee. As we explain below, we conclude that Mitchell has standing to challenge the GPS surveillance based on a continuing trespass.

### B.      Continuing Trespass

¶20      The State argues that Mitchell lacks standing to contest the trespass because he was not in possession of the car at the time the GPS device was installed. We understand the State's argument to be that Mitchell lacks standing because he did not have a property interest in the car at the time the initial trespassory act occurred. The State's argument reflects lower court holdings that have divided standing into two parts—distinguishing between when a defendant has standing to challenge the *installation* of the device and when he has standing to challenge its *use*, suggesting the former is subject to the *Jones* trespass analysis and the latter to the *Katz* reasonable-expectation-of-privacy test. *See, e.g.*, *Gibson*, 708 F.3d at 1277-78 (concluding that defendant had property interest in vehicle sufficient to challenge GPS installation, but lacked standing to challenge use of device when vehicle was out of his possession); *Hernandez*, 647 F.3d at 219-20 (concluding that defendant lacked standing to challenge installation of device because not in possession at time of installation, but had standing to challenge use). This line of thinking limits the trespass to the actual installation of the device and not its continued presence and use. Thus, these courts have concluded that a defendant has standing under *Jones* only if he was in lawful possession of the vehicle at the time the GPS device was *installed*.

¶21      The State's argument and the decisions upon which it relies, however, fail to appreciate the continuing nature of the trespass, which includes having the GPS device installed *and maintained* on the vehicle without the consent of a person having property rights to the vehicle. Black's Law Dictionary defines a "continuing trespass" as "[a] trespass in the nature of a permanent invasion of another's rights, such as a sign that overhangs another's property." 1541 (8th ed. 2004). In the context of real property, the Restatement explains that the "failure to remove . . . [a] thing which . . . [has been] tortiously . . . placed . . . constitutes a continuing trespass for the entire time during which the thing is wrongfully [present]." § 161 cmt. b. If possessory interest in the property is transferred subsequent to the trespassory placement, the transferee may object to its continued presence. *Id.* at cmt. e. Furthermore, the Restatement recognizes continued trespasses to chattel. *See* § 217 cmt. f

("[A]n intermeddling unprivileged by . . . consent . . . may be a continuous one . . . .").

¶22     That the ongoing presence of the GPS device constitutes a continuing trespass is demonstrated by Justice Alito's "tiny constable" analogy in *Jones*. 132 S.Ct. at 958 n.3 (Alito, J., concurring). Justice Alito reasoned that the closest analog to GPS technology at the time the Fourth Amendment was adopted would have been a constable—albeit a tiny one—hiding in a target's coach. *Id.* It would be absurd, however, to assert that the constable's trespass ends after he finds a comfortable hiding place and plants himself there. Instead, the constable continues to trespass as long as he remains in the coach without permission. If GPS is the government's modern-day constable surrogate, then there is no principled reason why courts should narrowly construe the trespass to the singular moment of affixing the device to a vehicle. Instead, the trespass continues so long as the device remains in physical contact with the vehicle without the consent of the owner or the borrower, just as the trespass would continue during the entire time the tiny constable was hidden in the coach.

¶23     As explained in *LeFlore*, standing to assert a Fourth Amendment violation should continue as long as the trespass continues, which means, in this context, so long as the GPS device remains on the vehicle without proper permission and the government is mining the device for information. 996 N.E.2d at 687 ("[T]he State's continued, and conceivably neverending, use of the GPS device to monitor the vehicle constituted a continuing trespass."). Thus, although lawful possession at the time of installation might be sufficient to confer standing,[9] it is not necessary. If a defendant later comes into lawful possession of a vehicle upon which a GPS device was installed without permission, then that defendant is in lawful possession during an ongoing trespass, thereby placing him within the ambit of *Jones*. *See id.* at 686-87 ("[I]f the defendant is not in possession of the vehicle when the GPS device is installed, but he later comes into lawful possession by borrowing the vehicle with the owner's consent and while the government's trespassory *act* remains in place, the defendant has standing to challenge the *use* of the GPS device."). This result is reinforced by the fact that Mitchell, the person having lawful possession of the vehicle during the continuing trespass, was the target of

---

[9] This was the case in *Jones*, but nothing in the Court's opinion indicates that its reasoning was limited to the facts of that case.

the surveillance—that is, the *raison d'être* for the GPS tracking in the first place.

**¶24**        Relying on *United States v. Karo*, 468 U.S. 705 (1984), the State argues there is a meaningful difference between one who possesses a vehicle at the time the government installs the GPS device and one who comes into possession only after the device has been installed. In *Karo*, the government installed a beeper in a container of ether *with the permission of the owner*, which was thereafter acquired by the defendant and used to track his movements. 468 U.S. at 708-09. Karo asserted that the installation of the beeper violated his Fourth Amendment rights, but the Supreme Court disagreed, noting that the barrel into which the beeper had been placed belonged to law enforcement at the time of placement and therefore the installation was consensual.[10] *Id.* at 711. The Supreme Court emphasized the consensual nature of the *Karo* installation when it distinguished that case from the facts in *Jones*. 132 S.Ct. at 952; *see also* Andrew McNichol, *Privacy in the Age of Smartphones: A Better Standard for GPS Tracking*, 45 Ariz. St. L.J. 1277, 1283 (2013) ("The prior owners of the property in *Knotts* and *Karo* consented to the installation of the device; Jones obviously did not give any such consent."). In *Karo* there simply was no initial trespass to challenge. Further, when the Court turned to the issue of the monitoring of the beeper, it did not address whether its continued presence constituted a *search*. Rather, the Court characterized the continued presence of the beeper as going toward whether there was a *seizure*, noting that for purposes of a seizure even if the beeper's presence was a technical trespass it did not impact the use of the barrel in any meaningful way. *Karo*, 468 U.S. at 712-13. Whether a particular action constitutes an unlawful seizure is a separate inquiry from whether that same action constitutes an unlawful search.[11] *See id.* *Karo*, then, does not stand for the unqualified proposition that one who comes into possession of an object or vehicle only after a tracking device is installed lacks standing to object to its presence and use as an unlawful search. Rather,

---

[10] The beeper placement in *Knotts*, likewise, was consensual. 460 U.S. at 278. There, however, the Supreme Court did not address the trespass issue because no party challenged the beeper's placement. *Id.* at 286 (Brennan, J., concurring).

[11] Unlike the seizure analysis, the usefulness of the GPS device to law enforcement in the context of a search depends on the device *not* interfering with the use of the vehicle in any meaningful way. Indeed, the GPS device is only useful so long as the target is unaware of its presence and continues to use the vehicle normally.

that case merely stands for the proposition that a defendant cannot assert a Fourth Amendment violation based on a trespass in the absence of a trespassory installation, and that the continued presence of the monitoring device is not a seizure. *See LeFlore*, 996 N.E.2d at 688 ("[O]ur reading of *Jones* reflects that the Supreme Court merely rejected the government's reliance on . . . *Karo* by noting that [*Karo* did not] involve a trespass."). As *Jones* made clear, though, the nonconsensual presence of the tracker has a place in our analysis of the search issue.

**¶25**　　　　Accordingly, we conclude that one who comes into lawful possession of a vehicle upon which law enforcement has installed a GPS device without permission may assert a Fourth Amendment violation under *Jones* based on a continuing trespass. Here, it is undisputed that on May 30, 2010 the GPS device remained on the vehicle without C.W.'s or Mitchell's knowledge or permission. Thus, as of May 30 the trespass was ongoing. Mitchell was in lawful possession on May 30 while the GPS device was used to track and record his movements. Because Mitchell, on May 30, was in lawful possession of the vehicle during the trespass, he has standing to challenge the warrantless use of the device under *Jones*.[12] Therefore, the trial court erred in finding that Mitchell lacked standing to object to the GPS tracking based on the trespass.

II.　　　Warrantless Placement and Use of the GPS Device

**¶26**　　　　Here, law enforcement physically intruded without permission onto a private vehicle in which Mitchell had a possessory interest and used that intrusion to obtain information. Under *Jones*, the State's trespassory placement and use of the GPS device to monitor Mitchell's movements constituted a search under the Fourth Amendment. Law enforcement did not obtain a search warrant authorizing the GPS placement. Instead, the Deputy testified at the suppression hearing that he had the opportunity to ask a magistrate for a search warrant, but chose not to do so. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz*, 389 U.S. at 357. The State has not

---

[12] Our conclusion is not inconsistent with *State v. Estrella*, 230 Ariz. 401, 286 P.3d 150 (App. 2012). There, we declined to address the trespass because the defendant failed to assert the theory in the trial court or to show fundamental error on appeal. 230 Ariz. at 403-04, ¶ 9, 286 P.3d 152-53.

argued that any exception to the warrant requirement applies to GPS tracking. We conclude, then, that the warrantless placement of the GPS device and its subsequent use to track Mitchell's movements violated the Fourth Amendment.

III.     Application of the Exclusionary Rule

**¶27**          The State argues that, if the GPS tracking was an unlawful search, the exclusionary rule should not apply under the good-faith exception announced in *Davis v. United States*, 131 S.Ct. 2419 (2011). In *Davis*, the Supreme Court held that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Davis*, 131 S.Ct. at 2429. We disagree that law enforcement's conduct falls within the *Davis* rule.

**¶28**          To support its argument, the State relies upon *United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010) (holding that DEA agents' installation of GPS devices on defendant's vehicle and use to monitor movements did not violate defendant's reasonable expectation of privacy), *cert. granted, judgment vacated*, 132 S.Ct. 1533 (2012).[13] When applying the *Davis* good-faith exception, courts generally agree that the authority must be binding in the jurisdiction where the police conduct occurred, and that reliance on the prevailing view among other jurisdictions falls outside the scope of *Davis*. *See United States v. Barraza-Maldonado*, 732 F.3d 865, 867 (8th Cir. 2013) ("For the good faith exception to apply, officers performing a particular investigatory action . . . must strictly comply with binding appellate precedent governing the jurisdiction in which they are acting."); *United States v. Martin*, 712 F.3d 1080, 1082 (7th Cir. 2013) (rejecting argument that police could rely on weight of authority around the country rather than on binding precedent in their jurisdiction); *State v. Allen*, 997 N.E.2d 621, 626-27 (Ohio App. 2013) (applying *Davis* test strictly and

---

[13] The Supreme Court vacated and remanded *Pineda-Moreno* in light of *Jones*. *Pineda-Moreno v. United States*, 132 S.Ct. 1533 (2012). On remand, the Ninth Circuit concluded that the good-faith exception precluded application of the exclusionary rule because then-binding Ninth Circuit precedent authorized federal agents to installation GPS devices without a warrant. *United States v. Pineda-Moreno*, 688 F.3d 1087, 1090 (2012). But Ninth Circuit decisions are not binding on Arizona courts and, therefore, the court's decision on remand does not control our analysis in this case. *See infra* ¶ 29.

refusing to apply good-faith exception because no binding Ohio precedent governed attachment of GPS).

¶29 The State's reliance on *Pineda-Moreno* is misplaced for two reasons. First, the court in *Pineda-Moreno* analyzed GPS tracking under *Katz*, not under the trespass test. 591 F.3d at 1215-16. Second, decisions of the Ninth Circuit, although persuasive, are not binding on Arizona courts. *See Planning Group v. Lake Mathews Mineral*, 226 Ariz. 262, 267, ¶ 22, 246 P.3d 343, 348 (2011); *State v. Montano*, 206 Ariz. 296, 297 n.1, ¶ 1, 77 P.3d 1246, 1247 n.1 (2003). "When a law enforcement official conducts a search based on a nonbinding judicial decision, that official is guessing at what the law might be, rather than relying on what a binding legal authority tells him it is." *LeFlore*, 996 N.E.2d at 692 (internal quotations omitted).

¶30 The State also argues that law enforcement's reliance upon *State v. Cramer*, 174 Ariz. 522, 525, 851 P.2d 147, 150 (App. 1992) (holding that the use of an infrared heat measuring device does not constitute a search) and *Knotts* meets the *Davis* test. But neither *Cramer* nor *Knotts* addressed the use of GPS technology, nor did *Knotts* address the trespass issue. Jurisdictions are divided on how apposite the authority must be in order for the good-faith exception to apply. In *Kelly v. State*, for example, the Maryland Court of Appeals concluded that *Knotts* was apposite authority for purposes of the good-faith exception in a case involving the installation of a GPS device. 82 A.3d 205, 215-16 (Md. 2013); *see also United States. v. Aguiar*, 737 F.3d 251, 261-62 (2d Cir. 2013) (concluding that *Knotts' de minimis* treatment of the beeper's installation made the case sufficiently apposite on the trespass issue). On the other hand, in *United States v. Sparks*, although the First Circuit applied the good-faith exception to GPS installation and tracking, it did not consider *Knotts* sufficiently apposite on the installation issue. 711 F.3d 58, 63, 65 (1st Cir. 2013). Instead, the court relied upon an earlier First Circuit case that concluded beeper installation was of little consequence to the search analysis. *Id.*; *see also LeFlore*, 996 N.E.2d at 692 (concluding good-faith exception was inapplicable because no binding authority addressed GPS technology).

¶31 Several considerations weigh against applying the good-faith exception here. First, no binding Arizona or Supreme Court authority explicitly authorized law enforcement to trespass onto private property to obtain information. Indeed, many pre-*Katz* Supreme Court cases were decided on a trespass theory. *See, e.g.*, *Silverman v. United States*, 365 U.S. 505, 511-12 (1961) (finding Fourth Amendment violation where "spike mike" used to listen in on a defendant's conversations penetrated wall and made physical contact with heating duct, and

distinguishing cases in which no unauthorized physical intrusion occurred). Further, the Supreme Court did not address the significance of the beeper installation in *Knotts*, and notably the installations in both *Knotts* and *Karo* were consensual rather than trespassory.[14] The State points to no binding authority condoning the trespassory installation of a tracking device. Second, as the law regarding trespassory device placement was, at the very least, unsettled, application of the exclusionary rule would provide meaningful deterrence because, as Justice Sotomayor emphasized in her *Davis* concurrence, it incentivizes law enforcement to err on the side of constitutional behavior. 131 S.Ct. at 2435 (Sotomayor, J., concurring). Finally, as Justice Scalia made clear in *Jones*, *Katz* supplemented rather than replaced the Fourth Amendment trespass test. 132 S.Ct. at 951. *Jones* did not overrule prior Supreme Court precedent or announce a new legal standard, but instead simply applied existing—albeit dormant—Fourth Amendment principles. Thus, we do not suggest that law enforcement is expected to anticipate new developments in the law. It is clear, however, that a reasonable reading of the relevant binding case law should have alerted law enforcement that, before attaching a tracking device to private property, it must obtain either a warrant or the property owner's permission to install the device.

¶32　　　　We conclude, then, that *Cramer* and *Knotts* are not sufficiently apposite on the trespass question and, therefore, cannot trigger application of the good-faith exception. The State points to no controlling Arizona or United States Supreme Court decisions authorizing the type of warrantless GPS tracking engaged in here, or that authorized law enforcement agents to attach a tracking device to private property without permission from the property's owner, nor do we find any. Consequently, we conclude that the good-faith exception to the warrant requirement is inapplicable and that the evidence should have been excluded.

¶33　　　　The Deputy admitted in the superior court that, absent the GPS tracking data, he would have had no way of knowing when the Kia left C.W.'s driveway or where the Kia would go. Without the illegally obtained GPS data, the Deputy would not have known that the Kia had driven to Phoenix on the night of May 30, nor would he have known

---

[14] Indeed, Justice Brennan's concurrence in *Knotts* cautioned that the case might have been much more difficult had the defendant challenged not just the use of the beeper, but also its initial installation. 460 U.S. at 286 (Brennan, J., concurring).

when or where to intercept it. His encounter with Mitchell after returning to Humboldt, the resulting dog sniff and alert, and the subsequent search of the vehicle never would have occurred that evening had it not been for the GPS tracking. Accordingly, we conclude that all evidence obtained from the search of the Kia was the fruit of an illegal search and should have been suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963) ("[E]vidence seized during an unlawful search [cannot] constitute proof against the victim of the search. The exclusionary prohibition extends as well to the indirect as the direct products of such invasions." (internal citations omitted)); *see also State v. Hackman*, 189 Ariz. 505, 508, 943 P.2d 865, 868 (App. 1997) ("The exclusionary rule requires suppression at trial of evidence gained directly or indirectly as a result of a government violation of the Fourth . . . Amendment[].").

## CONCLUSION

¶**34** The placement, continued presence, and subsequent use of the GPS device to monitor Mitchell's movements was an unlawful search under *Jones* to which no exception to the exclusionary rule applies. Accordingly, all evidence obtained as a fruit of the unlawful GPS surveillance should have been excluded, and we reverse Mitchell's convictions.

