IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

EMILIO JEAN, *Appellant.*

No. 1 CA-CR 14-0444
FILED 6-21-2016

Appeal from the Superior Court in Coconino County
No. S0300CR201200246
The Honorable Cathleen Brown Nichols, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Coconino County Public Defender's Office, Flagstaff
By Brad Bransky
*Counsel for Appellant*

**OPINION**

Judge Patricia A. Orozco delivered the opinion of the Court, in which
Presiding Judge Diane M. Johnsen and Judge Kenton D. Jones joined.

**O R O Z C O**, Judge:

¶1        Emilio Jean appeals his convictions and sentences for money laundering, conspiracy to commit money laundering and transportation of marijuana, transportation of marijuana for sale in an amount over two pounds and illegally conducting an enterprise.  Jean argues the trial court erred when it: admitted evidence of other acts, denied his motion to suppress evidence based on lack of standing to challenge a warrantless global positioning system (GPS) device and denied his motion for mistrial.  For the reasons that follow, we affirm Jean's convictions and sentences.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        Arizona Department of Public Safety (DPS) officers placed a GPS tracking device on a commercial truck in 2010 because they suspected the truck and its attached trailer were involved in criminal activity.  The officers did not, however, obtain a warrant before they placed the device on the truck.  Two days later, at the request of investigators who were tracking the truck, a DPS officer stopped the truck as it traveled eastbound on Interstate 40.  When the officer stopped the truck, the truck's owner was in the driver's seat and Jean was in the sleeper berth.  Jean claimed he was simply a driver-in-training.  A search of the trailer revealed ninety-five bales of marijuana weighing a total of 2140 pounds.

¶3        A jury found Jean guilty.  The trial court sentenced him to concurrent terms of ten years' imprisonment for conspiracy and transportation of marijuana for sale and placed him on five years' probation for illegally conducting an enterprise and money laundering.  Jean timely appealed.  We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A, 13-4031 and -4033.A (West 2016).[2]

---

[1]        We review the facts in the light most favorable to sustaining the trial court's ruling.  *State v. Hyde*, 186 Ariz. 252, 265 (1996).  We give deference to the trial court's factual findings.  *State v. Adams*, 197 Ariz. 569, 572, ¶ 16 (App. 2000).

[2]        Absent a change material to our opinion, we cite to a statute's most current version.

## DISCUSSION

### I. Admission of Evidence of Other Acts

¶4        Jean argues the trial court erred when it granted the State's motion to admit evidence pursuant to Arizona Rule of Evidence 404(b). Jean argues the State failed to prove by clear and convincing evidence that he committed the prior act, the prior act was too remote to the charged offenses to be relevant, and any probative value was substantially outweighed by the danger of unfair prejudice.  We review admission of evidence pursuant to Rule 404(b) for abuse of discretion. *State v. Van Adams*, 194 Ariz. 408, 415, ¶ 20 (1999).

¶5        The State filed a notice of its intent to offer evidence of other acts, to which Jean objected.  At a pretrial hearing, the State introduced the testimony of a Missouri State Highway Patrol Officer who arrested Jean in Missouri in 1999.  The officer testified that in 1999, he performed safety inspections of commercial trucks at a weigh station as part of his "criminal interdiction" assignment.  During a routine inspection of a truck and the associated paperwork, the officer noted various factors that suggested drug smuggling, including irregularities with the drivers' log books, air fresheners and multiple cell phones.[3]  The officer found three people in the truck with Jean in the sleeper berth.  Another passenger claimed to be a driver-in-training, yet the log books showed he had done very little driving. The driver consented to a search after a drug detection dog alerted to the trailer.  The search revealed 1774 pounds of bundled marijuana.  The primary driver claimed Jean was the person who monitored the loading of the trailer.  The officer arrested all three individuals, including Jean, but no one was prosecuted.

¶6        The trial court held it would admit the Missouri incident as evidence of other acts, stating the evidence was relevant to show Jean's knowledge.  The court also stated that the State proved by clear and convincing evidence both that the prior incident occurred and Jean was involved as a participant in the activity, not merely present. The trial court found the similarities between the two events "quite striking" and stated that "the Missouri incident really mirrors in almost every respect the incident in this case." Jean was in the sleeper berth during both stops. Both involved similarly large quantities of marijuana in the trailer of a large commercial truck.  There were similar concerns with the drivers' log books.

---

[3]        The trial court observed that cell phones were not as prevalent in 1999 as they are today.

Both stops involved trucks seemingly owned by small trucking companies that were having empty trucks drive long distances to pick up cargo, which made no economic sense. Additionally, the court found it "compelling" that there was evidence Jean supervised the loading of the trailer in the Missouri incident. The court acknowledged eleven years had passed since the Missouri incident, but held that went to the weight of the evidence and not its admissibility. The court also considered the evidence in the context of Rule 403, finding the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. The Missouri officer subsequently recounted the prior incident at trial.

¶7　　　　Evidence of other crimes, wrongs or acts is admissible if relevant and admitted for a proper purpose, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Ariz. R. Evid. 404(b). The trial court did not abuse its discretion when it held the State proved by clear and convincing evidence the Missouri incident occurred and Jean was involved, not merely present, and that the incident was relevant to prove Jean's knowledge in the current case. *See State v. Prion*, 203 Ariz. 157, 163, ¶ 37 (2002) ("For other act evidence to be admissible, it must be shown by the clear and convincing standard that the act was committed and that the defendant committed it."). Clear and convincing evidence is evidence that makes the proposition "highly probable." *State v. Renforth*, 155 Ariz. 385, 388 (App. 1987) (citation omitted). Clear and convincing evidence need not, however, "establish that it is certainly or unambiguously true." *State v. Vega*, 228 Ariz. 24, 29 n.4, ¶ 19 (App. 2011).

¶8　　　　The testimony of the Missouri officer, combined with other documentary evidence regarding the Missouri incident, was sufficient to permit the trial court to find it "highly probable" the Missouri incident occurred and that Jean was involved. The trial court did not abuse its discretion when it also determined the Missouri incident was not too remote in time. "Although remoteness between the two incidents affects the weight to be given the testimony by the jury, it generally does not determine its admissibility." *Van Adams*, 194 Ariz. at 416, ¶ 24. We have held that acts which occurred much more than eleven years prior to the charged offenses were not too remote. *See State v. Weatherbee*, 158 Ariz. 303, 304-05 (App. 1988) (holding prior acts that occurred twenty-two years before trial were not too remote to be admitted at trial); *State v. Salazar*, 181 Ariz. 87, 92 n.5 (App. 1995) (finding a prior act that occurred twenty years before the charged offense was relevant). The trial court did not abuse its discretion in finding that the eleven years that elapsed between the

Missouri incident and the charged offenses did not render the Missouri incident too remote.

¶9　　　　Regarding the danger of unfair prejudice, there is no question but that evidence of the Missouri incident was prejudicial to Jean. However,

> not all harmful evidence is unfairly prejudicial. After all, evidence which is relevant and material will generally be adverse to the opponent. The use of the word "prejudicial" for this class of evidence, while common, is inexact. "Prejudice," as used in this way, is not the basis for exclusion under Rule 403.

*State v. Schurz*, 176 Ariz. 46, 52 (1993) (citations omitted). "[A]ll good relevant evidence" is "adversely probative." *Id*. "Unfair prejudice" is prejudice that could cause a jury to render a decision on an improper basis, "such as emotion, sympathy or horror." *Id*.

¶10　　　　The trial court did not abuse its discretion when it determined the probative value of the evidence of the Missouri incident was not substantially outweighed by the danger of unfair prejudice. Moreover, the trial court gave an instruction that directed the jury to consider the Missouri incident only as it might show Jean's motive, intent, preparation, plan, knowledge, absence of mistake or accident. We presume juries follow their instructions. *State v. Dunlap*, 187 Ariz. 441, 461 (App. 1996).

## II.　　Motion to Suppress

¶11　　　　Jean next argues the trial court erred when it denied his motion to suppress. We review de novo the ultimate legal question of whether the search violated Jean's constitutional rights. *See Adams*, 197 Ariz. at 572, ¶ 16.

¶12　　　　Jean does not directly challenge the constitutionality of the stop of the truck or the resulting search; instead, he argues the use of the GPS to monitor the truck constituted an illegal search. Jean argues that absent the information authorities obtained by monitoring the truck through the GPS, there would have been no stop, so that the evidence obtained therefrom was fruit of the poisonous tree. Jean also argues that GPS tracking of the truck over several days violated his reasonable expectation of privacy.

¶13  Jean relies upon the decisions in *United States v. Jones*, 132 S.Ct. 945 (2012), and *State v. Mitchell*, 234 Ariz. 410 (App. 2014), to argue that the warrantless placement of a GPS to monitor an individual's movements is an unlawful search under the Fourth Amendment.  *Jones* held for the first time that the installation of a GPS on a vehicle constituted a trespass and the use of the GPS to monitor the vehicle's movements constituted a search under the Fourth Amendment.[4]  *Jones*, 132 S.Ct. at 949.  We relied upon *Jones* in *Mitchell*, a case very similar to *Jones*.  *Mitchell*, 234 Ariz. at 418, ¶ 26.

¶14  The trial court found Jean did not own or have a possessory interest in the truck, and on that basis, held Jean had no standing to challenge the placement of the GPS because he had no "reasonable expectation of privacy in a vehicle that he was just a passenger in."  Jean argues on appeal, however, that as a co-driver, he had as much of a possessory interest in the truck as the defendants in *Jones* and *Mitchell*, neither of whom owned the vehicle they drove.

¶15  The defendant in *Jones* did not own the vehicle at issue; it belonged to his wife, but he was "the exclusive driver."  *Jones*, 132 S.Ct. at 946 and n.2.  The defendant, therefore, had the rights of a bailee and standing to challenge the GPS.  *Id*.  Likewise, the defendant in *Mitchell* did not own the vehicle at issue, but he had permission from the owner to use the vehicle, sufficient to confer standing as in *Jones*.  *Mitchell*, 234 Ariz. at 412, 415, ¶¶ 3, 19.  Just as in *Jones*, the defendant in *Mitchell* had the rights of a bailee.  *Id*. at 415, ¶ 19.  In neither *Jones* nor *Mitchell* was the owner within the vehicle and in operational control of the vehicle at the time of the stop.

¶16  In *Mitchell*, we held that "lawful possession" of a vehicle when the GPS is installed "is sufficient to confer upon a defendant standing to challenge GPS tracking" under *Jones.*  234 Ariz. at 416, ¶ 17.  We explained that standard "is consistent with basic principles of tort law regarding trespasses."  *Id*. at ¶ 18.  Under those principles, a bailor or a bailee of chattel could maintain a trespass; we concluded the same status confers standing to challenge a trespass and resulting search under *Jones.  Id.*

---

4  *Jones* was decided after DPS officers placed the GPS on the truck in this case but before trial began.

¶17 The defendants' rights as bailees in *Jones* and *Mitchell* gave them standing to challenge the warrantless placement of GPS devices on the vehicles.[5] Jean, however, was not a bailee:

> To constitute a bailment there must be a delivery by the bailor and acceptance by the bailee of the subject matter of the bailment. It must be placed in the bailee's possession, actual or constructive. There must be such a full transfer, actual or constructive, of the property to the bailee as to exclude the possession of the owner and all other persons and [g]ive the bailee for the time being the sole custody and control thereof.

*Blair v. Saguaro Lake Dev. Co.*, 17 Ariz. App. 72, 74 (1972) (internal citations omitted) (quoting *Freeman v. Myers Automobile Service, Co.*, 40 S.E.2d 365, 366 (N.C. 1946)).

¶18 Here, there is no evidence the owner of the truck made a "full transfer" of the truck to Jean, nor is there any evidence of a delivery and acceptance. There is no evidence the owner placed the truck in Jean's actual or constructive possession so "as to exclude the possession of the owner and all other persons and give [Jean] for the time being the sole custody and control thereof." *Id.* There is no evidence Jean ever had exclusive use of the truck nor evidence he ever had permission to drive the truck or actually drove the truck without the owner present. There is no evidence Jean ever possessed the keys to the truck. In sum, even if Jean may have occasionally operated the truck as a co-driver while in the owner's presence, there is no evidence the owner did not reserve his right to possess and control the truck at all times.[6] Therefore, there is no evidence that Jean was a bailee of the truck. *State v. Orendain*, 185 Ariz. 348, 352 (1996) *overruled on other grounds* (holding that a defendant driving codefendant's vehicle lacked standing to assert Fourth Amendment challenge to the search of the vehicle when he had neither possessory nor property interest in the vehicle).

---

[5] *Jones* and *Mitchell* also found it significant that the defendants were the targets of the respective investigations. *Jones*, 132 S.Ct. at 947; *Mitchell*, 234 Ariz. at 411, ¶ 2. As noted above, DPS officers here had no idea Jean was in the truck until they stopped it.

[6] While Jean unquestionably "controlled" the truck when he drove it with the owner beside him, we do not equate that type of control with the type of "control," coupled with a possessory interest, necessary to establish a bailment.

**¶19**         "[A] necessary predicate to the application of the 'fruits' doctrine" is that the search violated the constitutional rights of the person who challenges the legality of the search. *State v. Super. Ct. (Treadaway)*, 119 Ariz. 573, 581 (1978). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Ill.*, 439 U.S. 128, 134 (1978). Because Jean did not own the truck and did not otherwise have a possessory interest in it, he had no standing to challenge the placement of the GPS device on the truck.

**¶20**         Finally, regarding Jean's claim that use of the GPS violated his reasonable expectation of privacy, Jean had no reasonable expectation of privacy in his movements as a passenger or driver of the truck. It is well settled that a person travelling in a vehicle on public roads has no reasonable expectation of privacy in the person's movements from one place to another. *United States v. Knotts*, 460 U.S. 276, 281 (1983). This court has held from this principle that there is no reasonable expectation of privacy that is infringed by GPS monitoring of a device placed on a vehicle, and that "[t]his is true particularly where the government's monitoring is short-term." *State v. Estrella*, 230 Ariz. 401, 404 (App. 2012). Given that authorities monitored the truck in which Jean was riding for only two days, we conclude he established no Fourth Amendment violation.

### III.    The Motion for a Mistrial

**¶21**         Jean argues the trial court erred when it denied his motion for mistrial after the owner of the truck referred, during his testimony, to other trips made to transport marijuana that were not part of the charged offenses. Jean objected when the truck's owner first referred to other trips in which he and Jean transported marijuana. The trial court sustained the objection, granted Jean's motion to strike the testimony and instructed the jury accordingly.

**¶22**         The owner later testified "we" made "so many trips" from Atlanta and "we" usually stopped for fuel in Texas. Jean did not object, but he asked the court and the State to admonish the owner again to not mention unrelated trips. The State admonished the owner accordingly. Later in the owner's testimony, when there was confusion as to whether he and Jean made two trips to Tucson in one day as part of the charged offenses, the owner testified, "[w]e usually often did." He further testified that "[i]t was [sic] so many trips that same way that they all kind of blurred together."

¶23        Jean again did not object, but stated that if this kept occurring he would move for a mistrial.  The court again admonished the owner not to talk about anything outside the scope of the question.  Later, when he explained the route he planned to take for the trip at issue, the owner testified that "we always used to take a cutoff and make a round – around the weigh station from Arizona and New Mexico."  Jean moved for a mistrial based on the owner's references to unrelated trips and the inference that Jean participated in those trips.  The court denied the motion but instructed the jury to disregard the testimony regarding how "we always used to take" a certain route.

¶24        The denial of a motion for mistrial is reviewed for abuse of discretion.  *State v. Murray*, 184 Ariz. 9, 35 (1995).  We will reverse only if the court's decision was both improper and clearly prejudicial.  *Id.*  The trial court is in the best position to determine whether an incident calls for a mistrial because the court is aware of the "atmosphere of the trial, the manner in which the objectionable statement was made, and its possible effect it had on the jury and the trial."  *State v. Koch*, 138 Ariz. 99, 101 (1983); *State v. Brown*, 195 Ariz. 206, 209, ¶ 12 (App. 1999).  A mistrial is the most dramatic remedy, only appropriate when justice requires.  *State v. Lamar*, 205 Ariz. 431, 439, ¶ 40 (2003) (citation omitted).

¶25        The testimony at issue did not necessarily refer to other trips with Jean.  The owner testified he had been involved in drug trafficking for several years and described his involvement in that trade before he met Jean.  The owner also identified several other individuals he worked with when he transported marijuana by truck.  The jury knew that over the course of several years, the owner had made a number of trips in which he transported marijuana by truck with individuals other than Jean.  Finally, the court struck the references Jean expressly objected to and instructed the jury to disregard them.  Again, we presume juries follow their instructions.  *Dunlap*, 187 Ariz. at 461.  Under these circumstances, the trial court did not abuse its discretion when it denied Jean's motion for mistrial.

## CONCLUSION

¶26           Finding no error, we affirm Jean's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: AA