SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-11-0180-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division Two |
| | ) | No. 2 CA-CR 10-0106 |
| NELSON IVAN BOTEO-FLORES, | ) | |
| | ) | Pima County |
| Appellant. | ) | Superior Court |
| | ) | No. CR20092575002 |
| | ) | |
| | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |


Appeal from the Superior Court in Pima County
The Honorable Terry L. Chandler, Judge
_____

Memorandum Decision of the Court of Appeals Division Two
Filed Apr. 12, 2011

**VACATED AND REMANDED**
_____

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                    Phoenix
    By   Kent E. Cattani, Chief Counsel
         Criminal Appeals/Capital Litigation
         Amy Thorson, Assistant Attorney General           Tucson
Attorneys for State of Arizona

ROBERT J. HIRSH, PIMA COUNTY PUBLIC DEFENDER                 Tucson
    By   Lisa M. Hise, Deputy Public Defender
Attorney for Nelson Ivan Boteo-Flores
_____


**B R U T I N E L**, Justice

¶1      Nelson Boteo-Flores was detained by police during a
stolen vehicle investigation.  We consider here whether a lawful

investigative stop had become a de facto arrest before Boteo-Flores confessed to the crime. Based on the totality of the circumstances, we find a de facto arrest.

## I. FACTS AND PROCEDURAL HISTORY

¶2 Tucson police officers went to an apartment complex and saw a black pickup truck matching the description of a stolen vehicle.[1] The officers took up surveillance positions to watch the truck and the apartment complex driveway.

¶3 A maroon car pulled into the driveway of the complex. Its lone occupant was the driver, who was talking on a cell phone and then used binoculars to look up and down the street a few times before driving away. A few minutes later the car returned, this time with three occupants, who the officer could not identify. The car drove to the back of the complex and out of sight.

¶4 Several minutes later, Boteo-Flores walked down the driveway, stood at the edge of the street, and looked up and down the street several times. The person who had driven the car then drove the black pickup truck from the complex. As he approached the street, the driver slowed and shouted to Boteo-Flores, who did not respond. All but one of the surveilling officers unsuccessfully pursued the truck; it was later found

---

[1] We consider only the evidence presented at the suppression hearing. *State v. Blackmore*, 186 Ariz. 630, 631, 925 P.2d 1347, 1348 (1996).

2

unoccupied.

¶5     While the pursuit was underway, the remaining officer approached Boteo-Flores.  Because there was at least one other person unaccounted for from the maroon car and the officer did not know if Boteo-Flores was armed, the officer handcuffed him. He did not frisk Boteo-Flores or ask him if he had a weapon.

¶6     After handcuffing Boteo-Flores, the officer advised him of his *Miranda* rights and began questioning him.  Shortly thereafter, a police unit returned and the officers called an auto theft detective to assist with the investigation.  Boteo-Flores was left handcuffed and standing by a police car for at least fifteen minutes, until the detective arrived.  The record does not reveal what the other officers were doing during this time or why Boteo-Flores remained handcuffed.

¶7     After arriving, the detective was briefed by the officers at the scene for another fifteen minutes.  He then advised Boteo-Flores of his *Miranda* rights and began interviewing him.  The detective arrested Boteo-Flores based on his admissions during the interview.

¶8     Boteo-Flores was indicted for facilitating the theft of a means of transportation, a class six felony.  He moved to suppress his statements, arguing that his initial detention was not supported by reasonable suspicion and, alternatively, that the initial detention had become a de facto arrest unsupported

3

by probable cause before he was interrogated. The State countered that reasonable suspicion supported the stop and that, although there was no probable cause to arrest until he made incriminating statements, the detention never became a de facto arrest. After an evidentiary hearing, the trial court denied the motion. A jury found Boteo-Flores guilty, and the trial court sentenced him to prison for the presumptive term of 1.75 years.

¶9 The court of appeals affirmed the conviction and sentence. *State v. Boteo-Flores*, 2 CA-CR 10-0106, 2011 WL 1379805 (Ariz. App. Apr. 12, 2011) (mem. decision). The court determined that the record supported "the [trial] court's finding that the officer had a reasonable, articulable suspicion that Boteo-Flores was involved in criminal activity." *Id.* at *2 ¶ 8. Although the court deemed it a "close question" whether a de facto arrest had thereafter occurred, it concluded that the trial "court did not abuse its discretion in determining Boteo-Flores was not under arrest" because "[t]he officer acted reasonably to protect his own safety and to prevent Boteo-Flores from fleeing, and he diligently pursued the purpose of the stop." *Id.* at *3 ¶ 12.

¶10 We granted review to consider relevant factors in determining when a lawful detention becomes a de facto arrest, an issue of statewide importance. We have jurisdiction pursuant

to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II. DISCUSSION

¶11 Police officers may briefly detain an individual who they have reasonable suspicion to believe is involved in a crime. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). In assessing the reasonableness of a *Terry* stop, we examine "(1) whether the facts warranted the intrusion on the individual's Fourth Amendment rights, and (2) whether the scope of the intrusion was reasonably related to the circumstances which justified the interference in the first place." *State v. Jarzab*, 123 Ariz. 308, 310, 599 P.2d 761, 763 (1979) (internal citation omitted); *see Terry*, 392 U.S. at 20. A valid *Terry* stop, however, can later become a de facto arrest. *See State v. Blackmore*, 186 Ariz. 630, 633-34, 925 P.2d 1347, 1350-51 (1996). "Whether an illegal arrest occurred is a mixed question of fact and law" that we review de novo. *Id.* at 632, 925 P.2d at 1349.

¶12 Boteo-Flores first argues that the officer lacked reasonable suspicion to detain him. Reasonable suspicion requires "a particularized and objective basis for suspecting that a person is engaged in criminal activity." *State v. O'Meara*, 198 Ariz. 294, 295 ¶ 7, 9 P.3d 325, 326 (2000). Officers cannot act on a mere hunch, *State v. Richcreek*, 187 Ariz. 501, 505, 930 P.2d 1304, 1308 (1997), but seemingly

5

innocent behavior can form the basis for reasonable suspicion if an officer, based on training and experience, can "perceive and articulate meaning in given conduct[,] which would be wholly innocent to the untrained observer." *Brown v. Texas*, 443 U.S. 47, 52 n.2 (1979). The totality of the circumstances, not each factor in isolation, determines whether reasonable suspicion exists. *See United States v. Arvizu*, 534 U.S. 266, 274-75 (2002) (noting that *Terry* forbids a "divide-and-conquer analysis"); *O'Meara*, 198 Ariz. at 296 ¶ 10, 9 P.3d at 327.

**¶13**     We agree with the courts below that the officer had reasonable suspicion to stop Boteo-Flores. The officer had reliable information that the truck was stolen. He saw suspicious behavior by the car's driver, who later drove off in the stolen truck. The officer's suspicions were further justifiably aroused by the timing of Boteo-Flores's arrival, his actions, and the truck driver's shouting to him. The officer testified that based on his training and experience, he suspected Boteo-Flores was acting as a lookout. Because this suspicion was reasonable given the totality of the circumstances, Boteo-Flores's initial detention was legal. *See, e.g.*, *Terry*, 392 U.S. at 5-6, 28.

**¶14**     What happened subsequently, however, presents a different question. Although "[t]here is no bright line that distinguishes a valid *Terry* stop" from a de facto arrest, "*Terry*

6

stops must be tailored to fit the exigencies of particular situations." *United States v. Pontoo*, 666 F.3d 20, 30 (1st Cir. 2011). "[W]hether the scope of an investigatory stop is reasonable demands careful consideration of the totality of the circumstances."[2] *Id.* "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion).

¶15 *United States v. Sharpe*, 470 U.S. 675 (1985), clarified that there is no rigid time limit for a *Terry* stop and the appropriate query is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 686. The Court cautioned that in assessing the reasonableness of a detention, courts should "consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Id.* It noted that "[t]he question is not simply whether some other alternative was

---

[2] Although we have suggested in the past that the test is "whether a reasonable person, innocent of any crime, would reasonably believe that he was being arrested," *State v. Winegar*, 147 Ariz. 440, 448, 711 P.2d 579, 587 (1985), the Supreme Court has indicated that the appropriate focus is on the totality of the circumstances and reasonableness of the officer's actions. *See United States v. Sharpe*, 470 U.S. 675, 685 (1985). Whether a reasonable person would believe he or she was being arrested is but one factor to consider.

available, but whether the police acted unreasonably in failing to recognize or to pursue it." *Id.* at 687; *cf. State v. Spreitz*, 190 Ariz. 129, 143-44, 945 P.2d 1260, 1274-75 (1997) (finding forty-five minute detention of blood-smeared defendant, who voluntarily cooperated with police and was not restrained, "no more than that necessary to accomplish a reasonable investigation of the unusual circumstances the officers encountered").

¶16      Here, the State, whose burden it is to demonstrate that the continued detention was reasonable, presented no evidence to meet that burden. *See Royer*, 460 U.S. at 500 ("It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure."). Although Boteo-Flores was properly detained and questioned initially, he remained handcuffed for another thirty to forty minutes after the other officers returned. The State does not suggest that probable cause supported that continued detention, and nothing in the record explains why it was reasonable to detain him in handcuffs to await interrogation by the detective.

¶17      Nor has the State explained why it was necessary to wait for a detective to question Boteo-Flores. Although an extended detention might be reasonable under *Terry* while

8

officers await specialized equipment such as a drug sniffing dog, *see, e.g.*, *State v. Teagle*, 217 Ariz. 17, 26-27 ¶¶ 33-37, 170 P.3d 266, 275-76 (App. 2007) (concluding one hour and forty minute detention to wait for drug sniffing dog reasonable), such concerns do not justify the continued detention here. Nothing in the record shows any reason for detaining Boteo-Flores to await the detective's arrival.

¶18    To be sure, it may be reasonable for an officer initiating a *Terry* stop to wait for another officer. But the record must reflect the reason. The officers at the scene had the information about the stolen vehicle and actually observed Boteo-Flores's suspicious actions. Nothing in the record suggests why the detective was necessary to question Boteo-Flores for purposes of completing the investigative stop.

¶19    The trial court and court of appeals relied on *State v. Blackmore*, 186 Ariz. 630, 925 P.2d 1347 (1996), in determining that the officer acted reasonably in handcuffing and detaining Boteo-Flores throughout the investigation. But that case focused on the initial use of handcuffs after an officer detained a suspect and not their continued use once the officer's safety concerns were allayed. *Id.* at 631, 925 P.2d at 1348. Significantly, the restraint and detention in *Blackmore* lasted "for only a few minutes," 186 Ariz. at 633, 925 P.2d at 1350, but Boteo-Flores was detained in handcuffs for

9

considerably longer, with no articulated concerns for preserving officer safety or preventing him from fleeing.

¶20     *Blackmore* does not control our analysis in this case. The detaining officer was justified in initially handcuffing Boteo-Flores because the officer was alone and did not know whether Boteo-Flores was armed.  That threat clearly ended when the other officers returned.  Boteo-Flores was compliant and nothing indicates he had a weapon; he was not even frisked. Although the use of handcuffs does not automatically transform a *Terry* stop into an arrest, *see Blackmore*, 186 Ariz. at 633-34, 925 P.2d at 1350-51, their continued use when no ongoing threat exists suggests the detainee is under arrest.  *See United States v. Bautista*, 684 F.2d 1286, 1289-90 (9th Cir. 1982); *cf. State v. Buti*, 964 P.2d 660, 664 (Idaho 1998) (finding the use of handcuffs and removal of suspects at gunpoint transformed stop into an arrest when several officers were present, there was no indication that the suspects were armed, and suspects were compliant).  The State argues that the continued use of handcuffs was justified because at least one passenger from the car had not been located.  But any threat based on the unknown whereabouts of another possible suspect, without more, was purely speculative.

¶21     The lack of evidence that officers acted diligently in investigating Boteo-Flores's connection to the stolen pickup

10

truck and the continued use of handcuffs when there was no ongoing safety threat or flight risk transformed the valid *Terry* stop into a de facto arrest before Boteo-Flores was questioned by the auto theft detective. The State conceded that police officers did not have probable cause to arrest Boteo-Flores until he confessed to the detective.

¶22    Even when a confession results from an illegal arrest, however, it need not be suppressed if it "was 'sufficiently an act of free will to purge the primary taint of the unlawful invasion.'" *State v. Reffitt*, 145 Ariz. 452, 457, 702 P.2d 681, 686 (1985) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)); *see also Brown v. Illinois*, 422 U.S. 590, 602 (1975). The State argues that the confession here was sufficiently attenuated from the illegal arrest; Boteo-Flores argues that the State waived this issue by not raising it below. These arguments were not considered in the decision below and should be addressed by the court of appeals in the first instance.

## III. CONCLUSION

¶23    For the foregoing reasons, we vacate the decision of the court of appeals and remand the case to that court for further proceedings consistent with this opinion.

_____
Robert M. Brutinel, Justice

11

CONCURRING:

_____

Rebecca White Berch, Chief Justice


_____

W. Scott Bales, Vice Chief Justice


_____

A. John Pelander, Justice


_____
*

_____
*Before his resignation on June 27, 2012, as a result of his appointment to the United States Court of Appeals for the Ninth Circuit, Justice Andrew D. Hurwitz participated in this case, including oral argument, and concurred in this opinion's reasoning and result.