NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GILE NICHOLS, JR., *Appellant.*

No. 1 CA-CR 15-0239
FILED 7-19-2016

Appeal from the Superior Court in Maricopa County
No. CR2012-131588-001 DT
The Honorable Robert L. Gottsfield, Judge (Retired)
The Honorable Erin O'Brien Otis, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Law Offices of Patricia A. Hubbard, Phoenix
By Patricia A. Hubbard
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Kenton D. Jones joined.

---

**W I N T H R O P**, Presiding Judge:

¶1          Gile Nichols, Jr. ("Appellant") appeals his convictions and sentences, arguing the trial court erred in denying his motion to suppress evidence derived from allegedly illegal searches and seizures.   For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          In June 2012, Phoenix police officers Michael Puskar and Patrick Garcia were conducting a night-time patrol in a high crime neighborhood, as well as investigating a crime unrelated to the present case. They parked their police car facing north near the house where the offender whom they were investigating was reportedly staying.  At approximately midnight, while sitting in the patrol car monitoring the activity in the neighborhood, the officers were blinded by high beam lights from two cars traveling southbound.  The two cars stopped in front of the targeted house and about six feet away from the patrol car, with the high beams still on. One of the two cars was stopped about six feet away from the curb and the other, a Lincoln in which Appellant was the front-seat passenger, was stopped in the middle of the road.  Because the positions of the vehicles and the use of the high beam lights violated various traffic laws, the officers decided to approach the cars.  They activated their emergency lights, and turned on the high beams and spotlights in the police car to better illuminate the two cars and monitor their occupants' movements.  Officer Puskar walked toward the Lincoln and Officer Garcia walked toward the other car.

¶3          As Officer Puskar was walking toward the Lincoln, he noticed Appellant leaning forward and down, appearing to reach under the seat and, for a moment, Officer Puskar could only see the top of Appellant's head.  Officer Puskar ordered Appellant and the other three occupants not to move in a voice loud enough for them to hear him through the open front windows of the Lincoln.  Upon hearing the order, Appellant sat up, but then leaned down and forward again, repeating the same apparent

reaching movement. Officer Puskar shined his flashlight on Appellant and ordered him to stay seated upright and not to move. When Officer Puskar got to Appellant's side of the car, he smelled a moderate odor of marijuana coming from the interior of the car. The odor grew stronger when Officer Puskar momentarily leaned toward the interior.

¶4        During this encounter, a party appeared to be going on at a house nearby, with a lot of people in front of the house. Seeing police, several of the partygoers started to walk toward the two cars. Feeling outnumbered, the officers requested backup. Once backup arrived a few minutes later, Officer Puskar asked Appellant whether there were any weapons in the vehicle; Appellant replied, "No." After that exchange, Officer Puskar ordered Appellant to exit the car, frisked him without finding any weapons or contraband, and handcuffed him. Officer Puskar also ordered Appellant to sit on the curb by the car, where another patrolman was watching. The rest of the occupants were then ordered to exit the car and join Appellant on the curb.

¶5        After all occupants exited the car, the officers searched the Lincoln and found a loaded handgun and a clear plastic bag of marijuana under the front-passenger seat previously occupied by Appellant. Officer Garcia also discovered Appellant was a prohibited possessor.

¶6        Appellant was formally arrested and taken to the police station. At the station, search of Appellant's clothing revealed a pill tightly rolled inside a dollar bill. Appellant claimed the pill contained ecstasy; later laboratory testing determined the pill contained ingredients mimicking the effects of ecstasy.

¶7        Appellant was charged with one count of misconduct involving weapons ("count 1"), one count of possession or use of dangerous drugs ("count 2"), and one count of possession or use of marijuana ("count 3"). Before trial, Appellant moved to dismiss the case with prejudice or, in the alternative, to suppress all evidence obtained through what he contended was an illegal search of the car in direct violation of *Arizona v. Gant*, 556 U.S. 332 (2009).[1] In response, the State argued *Gant* was

---

[1]        The defendant in *Gant* was arrested in a friend's yard for driving with a suspended license after he had parked and walked away from his vehicle. *Gant*, 556 U.S. at 335-36. The defendant and other suspects at the scene were secured in police vehicles, and a search of the defendant's car revealed a weapon and cocaine. *Id.* at 336. The Supreme Court refined its

inapplicable because it addressed a vehicle search incident to a lawful arrest and Appellant was not under arrest before the vehicle search. The State further argued the vehicle search was nevertheless lawful in the present case under the automobile exception recognized in *State v. Reyna*, 205 Ariz. 374, 378, ¶ 15, 71 P.3d 366, 370 (App. 2003), which allows police to conduct a warrantless search of a vehicle lawfully in police custody if probable cause existed. The State's view was that, at a minimum, the police had probable cause based on the odor of marijuana. The trial court granted Appellant's motion, finding that, once the police backup arrived at the scene, the officers were in a situation similar to *Gant* and, as a result, a warrant was required to search the vehicle.

**¶8**        The State moved for reconsideration, raising a new argument that, as a passenger in the car, Appellant did not have standing to challenge the search of the car.[2] The trial court reversed its prior ruling and granted the State's motion, finding a warrant was not required under *Gant* because Officer Puskar had valid reasons to believe the vehicle might contain evidence relevant to the offense for which the arrest was made.

**¶9**        Following trial, the jury was hung on count 1, but found Appellant guilty on counts 2 and 3. Appellant then entered a plea agreement with the State on count 1, pleading guilty and admitting two prior felony convictions in exchange for a sentence of no more than the presumptive term to run concurrently with those for counts 2 and 3. The court sentenced Appellant to seven years' imprisonment for counts 1 and 2 and three years' imprisonment for count 3, all to run concurrently, with thirty-one days of presentence incarceration credit. Appellant timely

---

earlier position in *New York v. Belton*, 453 U.S. 454 (1981), which authorized a contemporaneous search of the passenger compartment of a vehicle incident to arrest of an occupant of the vehicle. *Gant*, 556 U.S. at 346, 350-51; *Belton*, 453 U.S. at 462-63. The Court in *Gant* held the police may search the passenger compartment of a vehicle under the incident to arrest exception to the warrant requirement only if it was reasonable to believe the arrestee may access the vehicle at the time of search or that it contains evidence of the offense for which the arrest was made. *Gant*, 556 U.S. at 346, 351.

[2]        The court did not order a response from Appellant but held a hearing on the motion.

appealed; we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1)[3] to review counts 2 and 3.[4]

**ANALYSIS**

**¶10**          We review the trial court's ruling on a motion to suppress for abuse of discretion. *State v. Mitchell*, 234 Ariz. 410, 413, ¶ 11, 323 P.3d 69, 72 (App. 2014). In this review, we "consider only the evidence presented at the suppression hearing and view that evidence in the light most favorable to sustaining the trial court's ruling." *Id.* "Although we defer to the trial court's factual determinations, we review legal conclusions *de novo*." *Id.*

          *I.          Standing*

**¶11**          In his motion to suppress, Appellant challenged only the search of the car, contending the search violated the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution and Article 2, §§ 3, 4, 8, and 24 of the Arizona Constitution.

**¶12**          No person shall be subject to unreasonable search or seizure. U.S. Const. Amend. IV.[5] For a defendant to challenge a search or seizure, it must have violated the defendant's reasonable expectation of privacy in the place invaded or the property seized. *Rakas v. Illinois*, 439 U.S. 128, 143, 148-49 (1978). A defendant "always has a Fourth Amendment interest in his own person," and therefore has standing to challenge the search or seizure

---

[3]          Absent material changes after the relevant date, we cite a statute's current version.

[4]          We lack jurisdiction to review count 1 pursuant to A.R.S. § 13-4033(B) (disallowing the right to appeal in a noncapital case from a judgment or sentence entered according to a plea agreement).

[5]          Although Appellant cited the Arizona Constitution in his motion to suppress, he did not suggest, or provide any analysis to support, that the Arizona Constitution would grant him broader protection against search or seizure. In fact, Arizona courts have not applied the Arizona Constitution to grant protection against search or seizure broader than that provided under the U.S. Constitution, except in cases involving warrantless home entries. *State v. Juarez*, 203 Ariz. 441, 444-45, ¶ 14, 55 P.3d 784, 787-88 (App. 2002).

of his person. *State v. Dungan*, 149 Ariz. 357, 363, 718 P.2d 1010, 1016 (App. 1985).

¶13      The trial court found Appellant had standing to challenge the vehicle search, reasoning Appellant's position was similar to that in *Belton* where the defendant was also a passenger. The Supreme Court in *Belton* did address the merits of the defendant's challenge, implicitly holding the defendant had standing to challenge the warrantless vehicle search. *Belton*, 453 U.S. at 455-57. We note, however, that, in *Belton*, and like *Gant*, the defendant was arrested before the police officers searched the vehicle. *Gant*, 556 U.S. at 336; *Belton*, at 455-56. Here, although the parties seemingly agree Appellant was not arrested before the vehicle search, and the issue of whether he was arrested was not specifically addressed below, it seems obvious that, on this record, Appellant was *de facto* arrested before the vehicle search.

¶14      For an investigatory stop to become an arrest, a reasonable person in the defendant's position would have understood he or she was subject to restraints on freedom comparable to those associated with a formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 441-42 (1984). Use of handcuffs is not determinative in concluding a defendant was under arrest but, together with other factors, can transform a stop into a *de facto* arrest. *State v. Boteo-Flores*, 230 Ariz. 105, 109, ¶¶ 19-21, 280 P.3d 1239, 1243 (2012). In *Boteo-Flores*, the defendant was handcuffed at first because the officer was alone with him. *Id.* at 107, ¶ 5, 280 P.3d at 1241. After other officers arrived, the defendant continued to be handcuffed for more than thirty minutes before being formally arrested. *Id.* at ¶¶ 6-7. Our supreme court held the continued use of handcuffs in the absence of a safety threat or flight risk, and the lack of evidence showing the scope of the investigatory stop had been limited to what was necessary to effectuate the purpose of the stop, transformed the stop into a *de facto* arrest. *Id.* at 108-09, ¶¶ 14, 19-21, 280 P.3d at 1242-43.

¶15      Here, Officer Puskar handcuffed Appellant after backup officers had arrived and he had frisked Appellant without finding any weapons on him. Appellant, however, continued to be handcuffed, even though safety was not an apparent concern. Neither was potential flight, as Appellant was sitting on the curb being watched by a police officer. Instead, the investigatory stop exceeded the scope of investigating the original traffic violations of parking the car in the middle of the road and having high beams on in traffic. A reasonable person would have therefore believed the physical and positional restraints imposed were comparable to

those associated with a formal arrest. Accordingly, Appellant was *de facto* arrested and a vehicle search incident to that arrest followed.[6]

## II. Search Incident to Arrest

**¶16** Once a person is lawfully arrested, the police may search "the arrestee's person and the area 'within his immediate control' — . . . the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 753, 762-63 (1969). For a warrantless arrest to be lawful, "[t]he officer making the arrest must have probable cause to believe that a felony has been committed and that the person arrested committed it." *State v. Richards*, 110 Ariz. 290, 291, 518 P.2d 113, 114 (1974). "Probable cause exists where the arresting officers have reasonably trustworthy information of facts and circumstances which are sufficient in themselves to lead a reasonable man to believe an offense is being or has been committed and that the person to be arrested is committing or did commit it." *Id.* Here, probable cause existed because Officer Puskar smelled marijuana coming from inside the car, and noticed Appellant was the only occupant who moved after the stop was initiated. Appellant also failed to comply with Officer Puskar's orders not to move, and his movements seemed to indicate he was hiding, if not grabbing, something underneath his seat. Based on these uncontested facts and circumstances, the arrest would unquestionably be lawful.

**¶17** After lawful arrest of an occupant of a vehicle, the police may search the vehicle only if they could "reasonably have believed either that [the arrestee] could have accessed his car at the time of the search *or that evidence of the offense for which he was arrested might have been found therein*." *Gant*, 556 U.S. at 344 (emphasis added). The police officer smelled marijuana coming from the car and observed, before reaching the car or confronting Appellant, that Appellant appeared to be tucking, if not grabbing, something underneath his seat. Under these circumstances, it

---

[6] Even assuming the detention did not constitute an arrest, because Appellant did not assert any property or possessory interest in the car or any interest in the items seized, he lacked standing to challenge the vehicle search, and the denial of the motion to suppress would still be proper. *See Rakas*, 439 U.S. at 143, 148-49; *State v. Brooks*, 127 Ariz. 130, 137 n.1, 618 P.2d 624, 631 n.1 (App. 1980) (concluding the defendant lacked standing to challenge the vehicle search because he was a mere passenger and did not assert any interest in the item seized during the search).

was reasonable for the officer to believe evidence of contraband could be found in the car. Therefore, the vehicle search was lawful and the trial court properly denied Appellant's motion to suppress.[7]

**CONCLUSION**

**¶18**      Appellant's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: AA

---

[7]    The vehicle search was legal also under the "plain-smell" doctrine. Under this doctrine, before conducting a warrantless search, "[(1)] a police officer must lawfully be in a position to []smell the object, [(2)] its incriminating character must be immediately apparent, and [(3)] the officer must have a lawful right of access to the object." *State v. Baggett*, 232 Ariz. 424, 427-28, ¶ 16, 306 P.3d 81, 84-85 (App. 2013). All of those requirements are met in the instant case. Officer Puskar was lawfully in a position to smell the marijuana during the traffic stop, the incriminating character of the odor was immediately apparent, and the odor of marijuana emanating from the car, absent facts suggesting use or possession permitted under the Arizona Medical Marijuana Act ("AMMA"), gave the officer probable cause. *See State v. Sisco*, CR-15-0265-PR, slip op. at ¶¶ 1, 26 (Ariz. July 11, 2016) (holding the smell or sight of marijuana alone establishes probable cause unless other facts would suggest the use or possession complies with AMMA); *see also State v. Cheatham*, CR-15-0286-PR, slip op. at ¶¶ 11-12 (Ariz. July 11, 2016) (applying the "odor unless" standard adopted in *Sisco* to determine probable cause for automobile search).