# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 21-2993

_____

United States of America

*Plaintiff - Appellee*

v.

Tu Anh Nguyen

*Defendant - Appellant*

_____

## No. 21-2994

_____

United States of America

*Plaintiff - Appellee*

v.

Hieu Minh Le

*Defendant - Appellant*

_____

## No. 21-2995

_____

United States of America

*Plaintiff - Appellee*

v.

Sanh Binh Tran

*Defendant - Appellant*
_____

Appeals from United States District Court
for the Southern District of Iowa - Western
_____

Submitted: April 13, 2022
Filed: February 8, 2023
_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.
_____

MELLOY, Circuit Judge.

A jury convicted Defendants Tu Anh Nguyen, Hieu Minh Le, and Sanh Binh Tran of conspiring to distribute 100 kilograms or more of marijuana. 21 U.S.C. §§ 841(a)(1) & (b)(1), 846. The jury also convicted Tran and Nguyen of possessing 100 kilograms or more of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1) & (b)(1), and possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i). All three defendants appeal the denial of a motion to suppress and challenge the sufficiency of the evidence. They concede officers properly stopped their vehicle for commercial inspection but argue the officers subsequently exceeded the permissible scope of the inspection. In addition, Le appeals his sentence. Because officers developed probable cause before their actions exceeded the permissible scope of a commercial inspection, and because the other arguments lack merit, we affirm the judgments of the district court.[1]

_____

[1]The Honorable John A. Jarvey, then Chief Judge for the United States District Court for the Southern District of Iowa, now retired.

I.

The present convictions were supported in part by evidence discovered during three separate traffic stops: a November 2018 stop in Mississippi, a December 2018 stop in Iowa, and a March 2019 stop in Nebraska. The Iowa stop revealed the bulk of the evidence in these cases, including evidence supporting Tran and Nguyen's drug possession and firearm convictions. The Iowa stop also serves as the subject of the suppression arguments. The other two stops provided additional evidence of the conspiracy, including the defendants' roles in, and the scope of, the conspiracy.

In Mississippi, Le was driving an SUV with Nguyen as a passenger when an officer stopped them for speeding. No defendant challenges this stop or a resulting search. The search revealed $108,000 in currency in two sealed boxes and third box containing a large quantity of THC cartridges. Neither Le nor Nguyen claimed ownership of the currency.

In Nebraska, Le was driving a pickup, again with Nguyen as a passenger, when an officer stopped them for following another vehicle too closely. The pickup was towing a trailer with Washington plates. Again, no defendant challenges this stop or a resulting search. The search revealed a THC cartridge, $15,000 bundled with rubber bands in Le's suitcase, and 20–30 empty boxes.

In Iowa, Tran was driving a pickup with Nguyen as a passenger. The pickup had a tinted windshield and windows and was pulling an enclosed trailer with Washington plates, a California commercial vehicle sticker, but no USDOT number. An experienced Iowa Highway Patrol Trooper trained and assigned to perform commercial vehicle inspections noticed these features and stopped the vehicle for commercial inspection.

Upon approaching Tran, the officer quickly confirmed that the vehicle was a commercial vehicle subject to inspection. Tran stated that he was working for hire

-3-

on behalf of a company named "Extra Elbow Grease," and the officer concluded Tran was operating commercially. Further, the vehicle clearly exceeded an applicable 10,001 pound gross-vehicle-weight threshold. See 49 C.F.R. § 350.105(1). The officer commenced a "Level II" inspection. See id. (incorporating by reference the inspection standards of the Commercial Vehicle Safety Alliance).[2] Such an

---

[2]"The inspection criteria are developed by [Federal Motor Carrier Safety Administration of the United States Department of Transportation] in conjunction with the Commercial Vehicle Safety Alliance (CVSA), which is an association of States, Canadian Provinces, and Mexico whose members agree to adopt these standards for inspecting [commercial motor vehicles] in their jurisdiction." 49 C.F.R. § 350.105. The CVSA describes a Level II inspection:

> An examination that includes each of the items specified under the North American Standard Level II Walk-Around Driver/Vehicle Inspection Procedure. As a minimum, Level II Inspections must include examination of: driver's license; Medical Examiner's Certificate and Skill Performance Evaluation (SPE) Certificate (if applicable); alcohol and drugs; driver's record of duty status as required; hours of service; seat belt; vehicle inspection report(s) (if applicable); brake systems; cargo securement; coupling devices; driveline/driveshaft; exhaust systems; frames; fuel systems; lighting devices (headlamps, tail lamps, stop lamps, turn signals and lamps/flags on projecting loads); steering mechanisms; suspensions; tires; van and open-top trailer bodies; wheels, rims and hubs; windshield wipers; buses, motorcoaches, passenger vans or other passenger-carrying vehicles – emergency exits, electrical cables and systems in engine and battery compartments, seating, and HM/DG requirements, as applicable. HM/DG required inspection items will only be inspected by certified HM/DG and cargo tank inspectors, as applicable. It is contemplated that the walk-around driver/vehicle inspection will include only those items that can be inspected without physically getting under the vehicle.

Commercial Vehicle Safety Alliance, All Inspection Levels, Level II Walk–Around Driver/Vehicle Inspection (available at https://www.cvsa.org/inspections/all-inspection-levels/).

inspection extends generally to all paperwork and safety equipment, including load securement, that can be observed without physically going beneath the vehicle.

The officer quickly determined that very little about the situation seemed normal. Tran (as the driver) and the truck and trailer combination (as the vehicle) were out of compliance with regulations that made them subject to being placed temporarily out of service. First, Tran did not have a log book. This alone placed Tran out of service as a driver. Tran was able to provide bills of lading. The bills of lading, however, were irregular in that they did not contain full information of a type normally included with bills of lading such as details as to what was to be picked up and delivered (rather than vague listings) and precise locations and instructions as to where items were to be picked up and delivered. And the information that was provided on the bills of lading did not match Tran's description of his destination. Further, Tran's explanation of his destination did not make sense to the officer as a matter of commercial operations. Finally, the officer was unable to confirm federal licensing for the firm Tran identified or for the vehicle.

On the vehicle exterior, the officer noticed that the trailer's break-away braking connection was incorrectly attached rendering it non-functional. This violation made the vehicle subject to being placed out of service pending correction. The officer also confirmed the window tinting exceeded permissible limits for commercial vehicle windows.

While outside the trailer, the officer noticed the smell of bleach. Tran confirmed that he too smelled bleach but denied hauling bleach or other hazardous substances. The officer then asked to see safety equipment. Tran opened the enclosed trailer to show the officer a fire extinguisher and safety cones. The officer also checked load securement and discovered a disheveled load without reasonable securement. At this time the officer's suspicion grew again because items were not being treated in a manner consistent with the insured value as would be expected of

a commercial shipper. For example the bill of lading listed vases with substantial insurance values, but the officer observed a vase in an unsecured and open box along with boxes that were tipped over and strewn about.

Other observations during the commercial vehicle inspection increased the officer's suspicion that criminal activity was afoot. The officer noticed three two-way radios in the cab of the truck. He viewed this as suspicious because such radios are usually sold in pairs and are often used by a trailing or lead vehicle when illegal contraband is being transported. In addition, the officer viewed the entire scene as a misplaced attempt to appear in compliance with commercial trucking regulations whereas Tran seemed largely unaware of requirements. In light of the smell of bleach and the other irregularities, the officer called for assistance from a drug detection dog.

A K9 officer quickly responded and conducted an open air sweep of the vehicle exterior during the first officer's continued commercial inspection and within the normal time required to conduct a Level II commercial inspection. On a first pass, the dog did not indicate the detection of drugs. On a second pass, the dog alerted to the presence of drugs without focus on a particular spot. The K9 officer conducted a third pass and the dog indicated specifically towards the trailer door. Given the earlier suspicion and the canine indications, officers conducted a warrantless search of the contents of the trailer and truck. They found almost five hundred pounds of marijuana in sealed boxes in the trailer. Officers also discovered an unloaded handgun and ammunition in the truck. Officers eventually discovered that the truck and trailer belonged to Le, Le was the registered licensee for Extra Elbow Grease, and all three defendants were listed on the insurance for the vehicle. Nguyen stated that Le directed their activities and communicated with them during their travel.

Eventually all three defendants moved to suppress evidence discovered during the Iowa stop arguing the officers exceeded the permissible scope of a Level II commercial inspection. The defendants did not challenge the initial stop or

commencement of the inspection. Rather, they challenged the subsequent execution of the inspection, dog sniff, and warrantless search of closed boxes in the trailer. The district court denied the motion, finding the officers credible and finding the officers developed probable cause through the facts discovered within the proper commercial inspection and the contemporaneous open-air dog sniff.

A jury convicted Tran and Nguyen of the drug and firearm possession counts and all three defendants of a drug conspiracy count. The district court sentenced Tran and Nguyen each to 60 months' imprisonment on the conspiracy and drug possession counts, to run concurrently, and 60 months' imprisonment on the firearm count, to be served consecutively. The district court sentenced Le to 120 months' imprisonment on the conspiracy count based in part on a guidelines enhancement for his leadership role.

II.

"We review the denial of a suppression motion alleging an unreasonable search de novo [and] the district court's underlying findings of historical fact for clear error." United States v. Crutchfield, 979 F.3d 614, 616 (8th Cir. 2020). The Supreme Court has held that a warrantless search in the context of a closely regulated industry may be constitutional if, in part, the rules governing the search offer an adequate substitute for the protections of the Fourth Amendment's warrant requirement. See New York v. Burger, 482 U.S. 691, 702–03 (1987). Interstate commercial trucking qualifies as a closely regulated industry for which a variety of regulatory inspections may be performed without a warrant. See, e.g., United States v. Knight, 306 F.3d 534, 535 (8th Cir. 2002). The rules for such inspections limit officer discretion and satisfy the warrant substitute protections identified in Burger. Id. ("We agree with the district court's conclusion that the North American Standard Inspection Program, see 49 C.F.R. § 350.105, which was in force in Iowa, and pursuant to which the inspection here was commenced, provides notice to truck drivers of the possibility of a roadside inspection and limits officer discretion.").

To the extent the defendants argue the first officer exceeded the permissible scope of a regulatory inspection, the defendants present a factual challenge. The district court did not clearly err in finding the inspection proper. The trooper conducting the inspection had extensive training and experience and testified at the suppression hearing. Both he and a training inspector described the purpose and parameters of such a search. The district court properly concluded that asking a driver for log books, bills of lading, and safety equipment; inquiring as to ownership, registration, and insurance; inspecting a vehicle's exterior; and looking in a trailer for safety equipment or to inspect cargo securement are all proper aspects of a Level II inspection.

An open air dog sniff that does not prolong the initial purpose of a stop is permissible. See Rodriguez v. United States, 575 U.S. 348, 355 (2015). Here, the dog sniff occurred while the inspection was taking place and well-within the minimum time generally required to conduct a Level II search. To the extent the defendants challenge the execution of the dog search, they again present a factual challenge. The evidence showed certification and extensive training for the dog and handler more than sufficient to establish reliability. The district court did not commit clear error in finding the facts as a whole, including reliance on the dog, provided probable cause.

The defendants focus on the number of passes required for the dog's final indication. But this narrow focus does little to detract from the reliability of the indication or the finding of probable cause as a whole. See Florida v. Harris, 568 U.S. 237, 246–47 (2013) ("evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert"). Although defendants may challenge the dog's reliability on any basis, "[t]he question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." Id. at 248. Armed with the suspicion developed in the course of the

regulatory inspection and with the dog's indication of drugs, officers did not conduct an unreasonable search when they entered the trailer and look in sealed boxes.

Regarding the sufficiency of the evidence, most arguments fall away given our affirmance on the suppression issue. To the extent the defendants characterize the evidence as insufficient to support a conspiracy conviction, we find no error. Le's role as owner, the defendants' statements as to Le's communications during travel, and the repeated stops in multiple states with evidence of drugs or drug proceeds more than suffice to show the defendants were aware of the conspiracy and its purpose and knowingly joined in the conspiracy. See United States v. Shavers, 955 F.3d 685, 691 (8th Cir. 2020) ("Because conspiracies are often secretive, their existence may be proven through circumstantial evidence alone, and evidence of an agreement to join the conspiracy may be inferred from the facts." (citations omitted)). As to the firearm count, officers discovered the gun in the back seat of the truck where Tran and Nguyen could access it. A jury may rely on the possession of a firearm along with distribution quantities of drugs to support an inference that the firearm is there to protect drugs and proceeds and is thus possessed "in furtherance" of a drug trafficking offense. See, e.g., United States v. Vang, 3 F.4th 1064, 1067 (8th Cir. 2021).

Finally, to as to Le's sentencing challenge, the district court did not clearly err in finding him to be a leader and applying an enhancement pursuant to U.S.S.G. § 3B1.1. The resulting within-range sentence is presumptively reasonable on appeal, and Le presents no persuasive arguments to suggest this is the "rare case" where such a presumption is rebutted. United States v. Jones, 49 F.4th 1144, 1146 (8th Cir. 2022).

III.

We affirm the judgments of the district court.

_____