NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DAMIAN ORLANDO ROWE, *Appellant*.

No. 1 CA-CR 24-0547

FILED 10-16-2025

Appeal from the Superior Court in Navajo County
No. S0900CR201900750
The Honorable Jon H. Saline, Judge

**AFFIRMED**

COUNSEL

The Rigg Law Firm P.L.L.C., Pinetop
By Brett R. Rigg
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Joseph E. Begun
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which
Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1 Defendant Damian Orlando Rowe appeals from his conviction for transportation of narcotic drugs for sale, arguing that the superior court erred by denying his motion to suppress. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 One day in August 2019, a State Trooper, authorized to stop and inspect commercial vehicles, aided another officer in the stop of a commercial vehicle, leading to the seizure of hundreds of pounds of cocaine and methamphetamine. The two men arrested had the last name Rowe. Later that day, the State Trooper saw windshield-tint and reflector violations on Damian Rowe's commercial truck and stopped him near Holbrook for an administrative inspection.

¶3 As the trooper inspected the vehicle and requested Rowe's license and registration, he learned that Rowe shared the same last name as the two men arrested earlier, and that all three men were based in California. He also noticed air fresheners on every air vent on the truck's dashboard, two cans of spray air freshener in the cab, and multiple air fresheners in the sleeper berth. When the trooper asked Rowe to produce his logbook, Rowe presented a paper book, which is only permissible under 49 C.F.R. §§ 395.22 and 395.34 for a limited time when an electronic logbook fails to function. According to the trooper, an electronic logbook, unlike a paper one, is connected to the vehicle's computer and automatically keeps track of mileage and engine hours, marks vehicle location, and is therefore harder to falsify. Rowe explained that his electronic logbook had broken, he had just received the vehicle in Arkansas and had completed a single trip from Arkansas to California, and was then hauling his first load from California.

¶4 The trooper returned to his vehicle to check for any connection between Rowe and the earlier arrestees, as well as to input Rowe's paper information and to verify the logbook. During this time, he

checked with the arresting officer in the earlier case for any connection to the previous stop, as well as with a drug task-force officer for Rowe's criminal history or connections to drug trafficking.

¶5         About half an hour later, the trooper found no connection between the earlier arrestees and Rowe but learned that Rowe had been in contact with an individual the DEA was investigating. Rowe had also hauled a load from Arkansas to California, despite not saying so during their earlier conversation. The trooper asked Rowe questions about his logbook and, based on the administrative inspection, placed Rowe out of service for ten hours because of his failure to maintain an electronic logbook.

¶6         While questioning Rowe about his logbook, the trooper requested permission to search the truck, but Rowe declined. The trooper called for a drug-sniffing dog, which arrived an hour later. Within two minutes of arrival, the dog alerted to the driver's area of the truck, leading to the seizure of eleven pounds of cocaine.

¶7         Rowe moved to suppress the evidence from his truck, arguing that the stop exceeded the lawful scope of a traffic stop and the trooper had no reasonable suspicion to detain him beyond the initial stop. After hearing testimony from the arresting trooper, the court denied the motion. Rowe moved to reconsider. The court reviewed the trooper's dash camera footage and heard closing arguments but again denied the suppression motion.

¶8         Rowe appealed his conviction and sentencing for the transportation of narcotic drugs for sale.[1] We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

---

[1]     The jury originally convicted Rowe for transportation for sale and possession with intent to sell, but the court vacated the possession charge as a lesser-included charge. *See State v. McNulty*, ___ Ariz. ___, ___, ¶ 23, 573 P.3d 581, 588 (App. 2025) (The appropriate remedy when a defendant is convicted for both the greater and lesser-included offense is to vacate the conviction for the lesser.); *State v. Cheramie*, 218 Ariz. 447, 449, 451, ¶¶ 10, 22 (2008) (Possession of a dangerous drug is a lesser-included offense of transportation for sale of a dangerous drug.).

## DISCUSSION

**¶9**            The parties agree that the trooper could stop Rowe for the first nine minutes while inspecting the windshield and reflector violations. Rowe argues that the remaining hour-and-a-half detention exceeded the scope of the traffic stop and thus violated his Fourth Amendment rights.

**¶10**            In reviewing the validity of the trooper's stop in this case, we consider two timeframes. The first is the time from the initial stop to calling for a drug-sniffing dog. The second is the time between when the trooper requested the dog and when it alerted on the vehicle. We review the superior court's factual findings on a motion to suppress for an abuse of discretion, considering only the evidence presented during the suppression hearing (including the dash camera video) and viewing the facts in the light most favorable to affirming. *State v. Mitcham*, 258 Ariz. 432, 437, ¶ 13 (2024). But we review the superior court's conclusion on whether the search or seizure complied with the Fourth Amendment *de novo. Id.*

**A.      The Trooper Could Hold Rowe While Reviewing the Logbook as Part of the Initial Stop.**

**¶11**            The federal and state constitutions protect individuals against unreasonable searches and seizures, U.S. Const. amend. IV; Ariz. Const. art. 2, § 8, and "any evidence collected in violation" of these provisions "is generally inadmissible in a subsequent criminal trial," *State v. Valenzuela*, 239 Ariz. 299, 302, ¶ 10 (2016). The State contends, and the superior court found, that the trooper's detention and review of the logbook was still part of the trooper's initial inquiry because it fell within the warrant exception for pervasively regulated industries.

**¶12**            The State "carries the burden of proving that a warrantless search is constitutionally valid under an exception to the warrant requirement." *State v. Ontiveros-Loya*, 237 Ariz. 472, 476, ¶ 10 (App. 2015). Administrative searches of closely regulated industries are exempted from the warrant requirement if the regulatory scheme allows for the search and it satisfies the three-part test established in *New York v. Burger,* 482 U.S. 691, 700, 702-03 (1987); *United States v. Delgado*, 545 F.3d 1195, 1201 (9th Cir. 2008). Our supreme court has confirmed that commercial trucking is a pervasively regulated industry. *See State v. Jean*, 243 Ariz. 331, 337, ¶ 24 (2018). But we find the *Burger* exception inapplicable here. The trooper did not search the truck based on a closely regulated business. Instead, he searched the truck after the drug-sniffing dog alerted, giving him probable

cause for the search. Thus, we consider the trooper's initial seizure under the framework for a traffic stop.

¶13            "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *see also United States v. Steinman*, 130 F.4th 693, 703-04 (9th Cir. 2025). To be lawful, a traffic stop must be limited in its scope, and an officer may "address the traffic violation that warranted the stop," make "ordinary inquiries incident to the traffic stop," and "attend to related safety concerns." *Rodriguez*, 575 U.S. at 354–55 (quotation omitted). "The stop may last no longer than is necessary to effectuate these purposes and complete the traffic mission safely." *United States v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023) (quotation omitted); *see also Rodriguez*, 575 U.S. at 354 ("Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.").

¶14            "Lawful inquiries incident to a traffic stop can include checking a driver's license, determining whether there are outstanding warrants, and inspecting the automobile's registration and proof of insurance." *Steinman*, 130 F.4th at 703. Such actions are justified because "the Fourth Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention." *Rodriguez*, 575 U.S. at 354. But an officer may not make unrelated investigation inquiries "in a way that prolongs the stop." *United States v. Landeros*, 913 F.3d 862, 866 (9th Cir. 2019) (quoting *Rodriguez*, 575 U.S. at 355).

¶15            That is not to say that law enforcement officers can never extend a stop to investigate matters other than the original traffic violation without violating the Fourth Amendment. To the contrary, an officer may extend a stop to investigate matters other than the original traffic violation, so long as "the officers have reasonable suspicion of an independent offense." *Taylor*, 60 F.4th at 1239 (quoting *Landeros*, 913 F.3d at 867). In sum, "if a traffic stop is constitutionally justified at its inception[,] . . . the analysis is twofold. Was the stop prolonged, and, if so, was the prolongation justified by reasonable suspicion based on the information available at that juncture?" *Steinman*, 130 F.4th at 704; *accord Landeros*, 913 F.3d at 867–68.

¶16            Here, the trooper reviewed Rowe's logbook. Law enforcement officers may request routine driving documents while conducting a legitimate stop. Because commercial truck drivers must maintain logbooks, 49 C.F.R. § 395.8(k)(2), logbooks are also included in this category, *United States v. Maldonado*, 356 F.3d 130, 134 (1st Cir. 2004). It follows that an officer authorized to inspect commercial vehicles may ask

for, review, and take the time required to ensure a logbook's accuracy. *See United States v. Nguyen*, 59 F.4th 958, 963–64 (8th Cir. 2023) (Asking a driver for logbooks, bills of lading, and safety equipment and asking about ownership, registration, and insurance are all proper inquiries for a commercial vehicle.); *Rodriguez*, 575 U.S. at 355 (Officers may inquire into matters ensuring vehicles are operated "safely and responsibly."); 49 C.F.R. §§ 395.3 and 395.8 (The number of hours a driver may be driving is strictly limited and recorded in the logbooks.).

**¶17**        Rowe does not contest the validity of the initial stop or that he needed to have certain information on hand, including the logbook, data on his company, truck, and the goods transported, as well as the time and mileage traveled. And given the paper logbook and records, the trooper had to verify that Rowe was entering all necessary information into his logbook. Thus, the trooper had a sufficient reason to extend the duration of the traffic stop. *Cf. United States v. Barragan*, 379 F.3d 524, 527, 528-29 (8th Cir. 2004) (A forty-minute license-and-registration verification was reasonable because of the extenuating circumstance that the vehicle was registered in a different state than where it was bought.). And the trooper testified that he was entering and verifying this information as he made phone calls about his suspicions of drug activity. The evidence supports the superior court's finding that the trooper did not extend the stop beyond what was necessary to gather the physical information, and there is no issue with the trooper simultaneously inquiring into drug-related matters. *State v. Sweeney*, 224 Ariz. 107, 112, ¶ 19 (App. 2010) (An officer may inquire into matters unrelated to the grounds for the stop if the inquiries do not measurably extend the stop's duration. (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009))). Based on this evidentiary record, the superior court did not err in finding no Fourth Amendment violation during this timeframe.

**B.     The Trooper Had Reasonable Suspicion and Acted Diligently to Confirm the Suspicion in Continuing the Encounter.**

**¶18**        After reviewing Rowe's logbook and questioning him about it, the trooper had completed the purpose of the initial stop. Any subsequent delay or detention could be a second Fourth Amendment seizure, permissible only with consent or reasonable suspicion of criminal activity. *State v. Teagle*, 217 Ariz. 17, 23-24, ¶¶ 22, 25 (App. 2007); *see also*

*Steinman*, 130 F.4th at 704.[2] Rowe did not consent to a search, so the trooper had to have reasonable suspicion to continue the encounter.

**¶19** We review investigatory detentions as a two-step inquiry, first considering whether there was reasonable suspicion at the start of the detention, and then whether the action taken was reasonably related in scope to the circumstances justifying the stop. *Teagle*, 217 Ariz. at 24, ¶ 27. We review *de novo* the superior court's legal conclusions addressing (1) whether the totality of the circumstances amounted to reasonable suspicion and (2) whether the duration of the investigation was reasonable. *State v. Woods*, 236 Ariz. 527, 530, ¶ 10 (App. 2015); *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

**¶20** Reasonable suspicion must be based on a particularized and objective basis that the defendant is engaged in criminal activity, considering the totality of the circumstances. *State v. Boteo-Flores*, 230 Ariz. 105, 107-08, ¶ 12 (2012) ("The totality of the circumstances, not each factor in isolation, determines whether reasonable suspicion exists."). Courts "accord deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious actions." *Teagle*, 217 Ariz. at 24, ¶ 26.

**¶21** Here, the trooper testified about three facts giving rise to his suspicion: (1) Rowe was using a paper logbook when he had to use an electronic one, (2) Rowe had more air fresheners in the driver's compartment and sleeper berth than was necessary for ordinary use, and (3) Rowe gave inconsistent answers to questions related to his trips from Arkansas to California. The trooper testified that, based on his training and experience, the abundance of air fresheners could be used to cover the smell of marijuana (which is impermissible in commercial trucks), and paper logbooks are easy to falsify and are frequently used to hide criminal activity. These facts, in combination, gave rise to reasonable suspicion.

**¶22** Having determined the trooper had reasonable suspicion to detain Rowe, the question remains whether the length of detention was reasonable. There is no "hard-and-fast" time limit for a permissible investigatory detention. *United States v. Sharpe*, 470 U.S. 675, 686 (1985). The

---

[2] We do not consider the time in which the trooper requested consent to search the vehicle because it occurred while the trooper was questioning Rowe about his logbook, and the trooper requested a drug-sniffing dog within a minute after confirming Rowe declined.

issue is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Boteo-Flores*, 230 Ariz. at 108, ¶ 15 (quoting *Sharpe*, 470 U.S. at 686). An extended duration is generally permissible when waiting for a drug-sniffing dog. *Id.* at 109, ¶ 17; *Teagle*, 217 Ariz. at 266-67, ¶ 35 (An hour-and-forty-minute delay in receiving a dog sniff was not "necessarily unreasonable."); *see also United States v. Bloomfield*, 40 F.3d 910, 917 (8th Cir. 1994) ("[L]ocal government police forces and the state highway patrol cannot be expected to have drug dogs immediately available to all officers in the field at all times.").

**¶23** As in *Teagle*, the trooper did not unreasonably detain Rowe. The trooper requested a local drug-sniffing dog right after Rowe declined consent, and, when that was unavailable, he requested the nearest drug dog, which was about 30 miles away in Winslow. It is unclear why it took roughly an hour to drive the dog the 30 miles, but that is unrelated to the trooper's actions. He acted diligently to confirm his suspicions and did so promptly. The trooper's detention of Rowe for an hour, pending a drug-sniffing dog search, was reasonable and supported by reasonable suspicion.

## CONCLUSION

**¶24** We affirm.

